## TARLETON *v.* EMMONS.

If the purchase of property be made by the lender a condition of the loan of money, and the property be of no value, or, in comparison with the price allowed, of little value, the jury may find the transaction to be usurious.

Upon this question of value, evidence is incompetent that merely contains the opinion of an expert that the thing is worth less than another of similar use.

ASSUMPSIT, for money had and received. The plaintiff in 1838 applied to the defendant for the loan of $150, which the defendant declined at that time to lend him, but desired him to call again. The plaintiff did so; and the defendant exhibited to him the model of a winnowing-mill, which he proposed to sell to the plaintiff, together with the right to use and vend the same in eighteen towns, for $175; and provided he would buy at that sum, and give his note for the price, and for $150 more, secured by a mortgage upon his farm, the defendant offered to advance the $150 which the plaintiff had desired to borrow. This proposition was at first declined, but afterward accepted by the plaintiff, who was pressed for money, and the note and mortgage were given.

It appeared that subsequently the defendant received funds of the plaintiff to an amount sufficient to pay the note.

Upon the trial, the plaintiff introduced the deposition of one Rollins, to prove the right to use and vend the winnowing-mill to be worthless, or nearly so. He testified that he had been in the habit of making winnowing-mills the last ten or twelve years, and had examined the model in question, which he did not consider an improvement upon the Pearson mill, which had been in use fifteen years, which had not been patented, and which was the description of mill that the witness had been accustomed to make. He did not consider that the patent in question

would be of any value to him, because he liked the mill he had been used to build better.

The court instructed the jury that if the contract concerning the patent right was only a pretence or show, contrived in order to obtain a greater amount of interest than six per cent. for the money loaned, it was usurious and illegal, and the plaintiff was entitled to recover back the amount of money so paid. But if it was a *bonâ fide* sale, he must abide by it, although he may have given more than the thing sold was worth, provided there was no fraud on the part of the defendant, in the sale. But if the sale was an actual and *bonâ fide* sale, without fraud, the plaintiff must pay the stipulated sum for it; for the evidence did not tend to show it to be entirely worthless, but only of less value than was paid for it.

A verdict was returned for the plaintiff, which the defendant moved to set aside, on account of the admission of the evidence of Rollins, and for misdirections given by the court.

*Bell* and *Clarke*, for the plaintiff.

*West* and *Morrison*, for the defendant.

WOODS, J. On the trial of this cause a question was made, whether a sum of money reserved by a note given by the plaintiff to the defendant, and afterward paid by him, was, in part, in consideration of a loan of money upon usury. This was a question of fact for the jury to settle upon the evidence, if competent evidence existed, upon which such a fact could be established; and this is a question which has come up for our determination. It is one which may, without much difficulty, be settled upon the authority of cases bearing rather directly upon the point.

The application made by the plaintiff to the defendant

Tarleton *v.* Emmons.

was for a loan of money. On this subject the negotiation proceeded, was suspended, and was renewed. The proposal to buy the winnowing-machine came from the defendant in the form of a condition annexed to the loan. The proposal was rejected by the plaintiff, but finally accepted under the pressure of his want of money, and of the accommodation which he was able to obtain from the defendant by complying with the condition of buying the machine.

Now upon these facts alone, and without the inference of more, the jury could not have found the fact of usury. But it must further appear that the thing sold was really of less value than the price at which it was reckoned in the transaction, and that a benefit was intended for the defendant, in the transaction, to the extent of the difference between the value of the machine and patent, and the price allowed for it; and that this benefit, profit, or whatever else it may be denominated, was designed by the parties as a reward to the defendant for the loan of the money, and was, together with the interest reserved, over the legal rate. This state of facts would have made the loan of money a usurious loan, as was in substance charged by the court at the trial.

On this subject, the case of *Lowe* v. *Waller*, Doug. Rep. 736, is a distinguished authority. There, the party in want of money, after a little negotiation, was induced to take a quantity of goods, for which he gave the bill which was in controversy in the case. The jury found the contract to be usurious, and upon the question reserved Lord *Mansfield* said: "The only question in all cases like the present is, what is the real substance of the transaction, and not what is the color and form. This is one of the strongest cases of the sort I ever knew litigated. It is impossible to wink so hard as not to see, that there was no idea between the parties of anything but a loan of money."

"They did not act as persons selling goods upon credit, but as lending on the security of the note," &c.

To the same point is the case of *Train* v. *Collins*, 2 Pick. Rep. 145, in which that of *Lowe* v. *Waller* is cited. In that case, the party had been induced to take a part of the sum for which he gave his note, in worthless notes of other persons. The jury found that there was usury, and the verdict was sustained, although the court thought the evidence would better have supported a verdict upon the ground of fraud.

These cases expressly decide that a distinct agreement to pay and receive usury need not be proved to have been entered into by the parties, in terms, but that the agreement might be inferred from the facts presented by the cases. But, as was said in *Hammett* v. *Spa*, 1 Bos. & Pul. 151, "It cannot be determined that any particular fact constitutes or amounts to usury, till all the circumstances with which it was attended have been taken into consideration." While the naked fact that the purchase of the machine was pressed upon the plaintiff, and submitted to, by him, as a condition of the loan, might have been left to the jury, for them to find the transaction to have been usurious, it did not in law amount to usury, and the jury might not so have found it; and the question of the actual value of the machine became material, therefore, as affecting the issue to be tried.

The point to be proved was, that the thing sold was of no value, or that it was, in comparison with the price allowed for it in the trade, of little value. On this head, Rollins testified that he had examined the model in question, which he did not consider an improvement on the Pearson mill, which was not patented, and that the patent in question would be of little value to himself, for the reason that he preferred the Pearson mill, which he had been accustomed to make. Now this evidence might possibly be admitted, as the opinion of an expert, to prove that the model in

question was not as good as Pearson's, or at least no better; but it is not competent to show that it was not worth all that was colorably paid for it, or that it was worthless.   The court, however, instructed the jury otherwise.   They were told that this evidence tended to show the thing to be of less value than the price that was paid for it.   The misdirection was to a material point, against the defendant, against whom the verdict was found, upon the evidence. The testimony of Rollins, standing alone, proves nothing that relates to the merits of the case.   It went in, however, and with instructions as to its legitimate effect that were erroneous, and might have prejudiced the defendant.

The verdict must therefore be set aside, and

*A new trial granted.*